THE ROMAN CATHOLIC APOSTOLIC CHURCH IN PUERTO RICO, ETC., Plaintiffs and Appellees, *v.* MUNICIPALITY OF HATILLO ET AL., Defendants and Appellants.

No. 8251.   Argued May 2, 1941.—Decided July 21, 1941.

*Luis Mercader* and *Pablo J. Aguilar* for appellants. *Heriberto Torres Solá* for appellees.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

Pursuant to an Act approved March 10, 1904, "to confer original jurisdiction on the Supreme Court of Porto Rico for the trial and adjudication of certain property claimed by the Roman Catholic Church in Porto Rico" (Laws of 1904, p. 134), said Church presented in this court, on June 6, 1904, a complaint against the Municipalities of Ciales, Camuy (which comprised Hatillo at that time), Río Grande, Comerío, Patillas (Cidra), Humacao, Fajardo, and Adjuntas, and alleged, as to the properties lying in Hatillo, as follows:

"The Roman Catholic Church is at present and has been for many years in the lawful, quiet, and peaceful possession of the following church buildings and temples dedicated and consecrated to the Catholic cult:

"1.— *       *       *       *       *       *       *

"2.—A parish church standing in front of the main square of Hatillo and having an area, including the churchyard, of 428 meters and 61 centimeters. The same is bounded: on the north by North Plaza Street; on the south by South Plaza Street; on the east by the house of Miguel Arrieta; and on the west by the main square."

On June 24, 1904, the Supreme Court made an order admitting the complaint filed, and by letters mandatory (*cartas-órdenes*) directed to the proper municipal judges, it ordered the defendant municipalities represented by their respective mayors, to be cited to answer said complaint within the period of twenty days, not to be extended, in which they should appear in the proceedings, by delivering to each of them at the time of the service of the summons a copy of the complaint attached thereto; which order was sent on June 27, 1904, for its execution, to the Municipal Judge of Camuy, who, on June 30, 1904, complied therewith by notifying Don Laurentino Estrella, Mayor of Camuy, and serving on the latter a copy of the complaint and of the order.

Nothing further was done in the case until two years and six months afterward, on January 10, 1907, when the plaintiff filed a motion setting forth and praying:

"That as the Municipalities of *Camuy*, Río Grande, Comerío, Patillas, Cayey, and Humacao had failed to file their respective answers within the time fixed in the summons, in accordance with the provisions of paragraph 2 of Section 194 of the Code of Civil Procedure, the Secretary of this Hon. Court should *enter the default of said defendants.*" (Italics ours.)

The said motion was granted by this court on January 17, 1907.

After one year and nine months had elapsed, or on October 5, 1908, the plaintiff filed a motion in which it alleged that as the default of the defendant municipalities, including that of Camuy, had been entered, the prayer of the complaint should be granted, with costs.

On October 21, 1908, this court rendered a judgment which, as regards the Municipality of Camuy (Hatillo), reads as follows:

"This case has been submitted for determination by this court upon a motion filed by the plaintiff in which it seeks a judgment granting the prayer of the complaint *on the ground that the defendant has failed either to appear, or to answer the complaint, and that*

*its default had been timely entered;* and after considering the motion and the record of the case, the court hereby sustains the motion and, consequently, orders, adjudges, and decrees that the plaintiff recover from the defendants the things prayed for in its complaint; and it is hereby declared that the full ownership or dominion of the houses and lots hereinafter described is vested in the plaintiff and that such title, hereby decreed to be final," is valid and effective as against any claims that might be made by the defendants regarding said properties or any part thereof; and it is further decreed that any claims on the said properties or any part thereof that the defendants or any other persons claiming through them might have shall be deemed void, groundless, and of no effect; and said defendants shall forever be barred and forbidden from making any claim or setting up any title whatever regarding such properties or any part thereof.

"The said properties are described as follows:

"    *    *    *    *    *    *    *

"2.—A parish church standing in front of the main square of Hatillo and *having an area, including the churchyard, of 428 meters and 61 centimeters*. The same is bounded: on the north by North Plaza Street; on the south by South Plaza Street; on the east by the house of Miguel Arrieta; and on the west by the main square.

"It is further ordered, adjudged, and decreed that the plaintiff recover the full amount of the costs of this suit taxed at (the amount is not stated), and that a writ of execution be issued against the properties of the defendants to satisfy this judgment.

"It is so ordered, adjudged, and decreed by the court. (Sgd.) José C. Hernández; José María Figueras; J. H. MacLeary; Adolph G. Wolf."

Relying on the above judgment, The Roman Catholic Apostolic Church in Puerto Rico and the Parish Church of Hatillo brought on July 19, 1938, in the District Court of Arecibo, an action against the Municipality of Hatillo and Francisco Ríos to determine conflicting claims to real property and for other relief, and alleged to be the owners and possessors of a concrete building dedicated to the Catholic cult in the Parish of Hatillo, built on a lot which has always been bounded as follows: on the north by North Plaza Street; on the south by South Plaza Street; on the east by a house

formerly belonging to Miguel Arrieta and then to the heirs of Manuel Circums; and on the west by the main square of Hatillo (the complaint, it is noted, fails to state the area of the lot); that when fencing off the churchyard in 1921, Presbyter José C. Delgado, wishing to economize, only enclosed a part of the churchyard in the way it is at present, although the Parish Church of Hatillo had always used the whole area of its churchyard within the said boundaries; that the plaintiffs obtained a declaration of ownership of the above-described property in their favor by virtue of a judgment rendered by the Supreme Court in case No. 4, *supra;* that the defendant municipality, claiming to be the owner of a portion of the lot and churchyard of the plaintiffs, on March 24, 1938, passed an ordinance granting to defendant Francisco Ríos a permit to build a small concrete structure, to be used as a small café (*cafetín*), on a parcel with a frontage of eleven feet and a depth (*fondo*) of twenty-five feet, lying within the property of the plaintiffs; that codefendant Francisco Ríos is now building a structure in the form of a kiosk, in violation of the ownership rights of the plaintiffs, who have never conveyed to the Municipality of Hatillo or to any other person any portion whatever of the land lying within the said boundaries and whose ownership was recognized by the Supreme Court of Puerto Rico, and that, on the contrary, they have protested against all attempts from other persons to use any part of their plot, especially if used for putting up kiosks. The complaint ends by praying that, in conformity with Section 282 of the Code of Civil Procedure, the plaintiffs be adjudged to be the absolute owners thereof and entitled to the lawful and peaceful possession of the whole parcel of land and building described in the complaint, and that neither the defendants nor any other person or entity claiming through them are entitled to possess, enjoy, or in any other way dispose of the said property, either in whole or in part, and that the defendants be ordered to va-

cate and leave at the free disposal of the plaintiffs the lot on which codefendant Francisco Ríos is building the kiosk.

The plaintiffs filed, together with the complaint, a petition for an injunction *pendente lite* restraining the defendants from proceeding with the construction of the kiosk. The defendants opposed the petition for injunction, and after a hearing the court granted it and issued the writ sought upon the furnishing of a bond in the sum of $1,500.

The defendants in their answer to the complaint admitted some of the facts and denied others, and as a special defense, they set up, among other particulars, that the judgment rendered by the Supreme Court on October 21, 1908, is void and ineffective because the defendant municipality had not been personally served with summons either by the marshal of the District Court of Arecibo or by any private person over 18 years of age not a party to the action nor interested therein, nor was the return verified as prescribed in the Code of Civil Procedure in force; because the Municipality of Camuy could not consent to a judgment and the default entered amounted to a simulated consent; because, even if the default was properly entered, no trial was had against the defendant; because defendant was not legally served with notice of the judgment. Because the judgment was not executed within the statutory period of five years and no affidavit has been produced stating the reason for its execution after the expiration of that period; because more than twenty years have elapsed without the plaintiff taking any step to execute said judgment thus incurring in latches, in estoppel, and even in the prescription provided for in Section 1864 of the Civil Code.

The defendants further pleaded that the Municipality of Hatillo was founded upwards of seventy years ago on a tract of land measuring 9.89 acres (*cuerdas*) donated by Agustín Ruiz Miranda, and it took possession of said tract which included the land on which the church was built and

which is detained by the plaintiffs; that until the year 1920 the plaintiffs had been in the enjoyment of the building and of only 428 sq. m. of the land and that at that time Father Delgado and a group of residents secured from José Casanovas Marrero, then Mayor of Hatillo, a revokable permit to occupy a strip of land two meters wide on each of the north and south sides, of the churchyard which had had until then a wooden enclosure, in order to widen the yard and build a concrete fence, the plaintiffs thus starting the use of such extension within the concrete enclosure erected with the contributions from the residents, and it is alleged by the defendants that the plaintiffs are detaining and using 1,102.50 sq. m. fenced off by the concrete enclosure. The defendants further alleged by way of defense:

"That the Municipality of Hatillo, ever since 1920 or 1921, when the abovementioned concrete fence was built, has continued in the actual possession as owner—which it had held for almost a century previously, by reason of the donation of 9.89 cuerdas, quietly and publicly—of the four parcels (which are described), surrounding the said fence and has used them . . . as streets for the public traffic, and that a portion thereof adjoining the north and south sides of said fence has been leased for erecting thereon kiosks for the sale of goods, for installing merry-go-rounds and similar contrivances, and for the temporary erection of booths for games of chance during the patronal festivities; and the defendants allege that any right or claim the plaintiffs might have had is barred in accordance with Sections 1857, 1859, and 1863 of the Civil Code of Puerto Rico, 1930 ed.

"That in 1927 the defendant Municipality of Hatillo, in order to separate, out of the north and south parcels already described, the portion for the erection of kiosks and booths during festivities from that portion used for public streets proper, built a concrete path 18 feet wide between the concrete fence and the street extending some 137 feet on the north and south sides and as a prolongation of the lateral paths of the main square; and in 1933 the said Municipality of Hatillo built, starting from the fence on the west side towards the streets in front of the square, a concrete sidewalk about two meters wide all along the front of the north-to-south concrete path.

"That defendant Francisco Ríos, by purchasing concessions from several persons, with the consent of the municipality, and by direct concessions to him from the same municipality, has been ever since 1923 in possession as usufructuary of a portion of the municipal land measuring 11 feet in front by 25 feet deep and bounded: on the west or front by the city-hall sidewalk adjoining the street in front of the square; on the north by North Street separated by the aforesaid municipal concrete path; on the south by the concrete fence of the church as already explained; and on the east by the remainder of the municipal land enclosed within the said concrete path; and said defendant Ríos further alleges that from the year 1923 until July, 1938, when the plaintiff church sued out the injunction *pendente lite* against him, he has had the uninterrupted, peaceful, and public use and possession, in good faith, of the aforesaid municipal usufruct in his capacity as owner thereof, occupying and using the land by building thereon wooden booths roofed with galvanized iron and floored with concrete, and equipped with plumbing, sanitary, and electrical installations, the whole of it constituting a permanent structure, without any objection having been made by the plaintiffs until July, 1938, and for this reason any right or action which they might seek to enforce against him has prescribed in accordance with Sections 1857 and 1864 of the Civil Code of Puerto Rico, 1930 ed."

After a trial, the lower court rendered a judgment in favor of the plaintiffs, the dispositive part of which reads as follows:

"For the reasons stated it is adjudged: That by virtue of a title recognized in a final (*firme*) judgment, the plaintiff church is the owner of the building and lot which is described in the third paragraph of the complaint.

"That the Municipality of Hatillo can not dispose of, nor the other defendant build upon, the lot where he had started the building of a concrete booth and which is more particularly described in the sixth paragraph of the complaint.

"That the defendants, and their assigns, successors, or agents, are hereby enjoined from proceeding with or authorizing the said building and must leave at the disposal of said plaintiff the lot now occupied by the same, or any part of the property described in the third paragraph of the complaint. The costs, excluding attorney's fees, are imposed on the defendants."

From that judgment the defendants took the present appeal, and they have assigned in their brief nine errors claimed to have been committed by the lower court: In issuing the injunction *pendente lite;* in holding that the judgment of the Supreme Court, rendered in the exercise of its original jurisdiction, was valid and effective; in holding that said judgment is *res judicata;* in holding that said judgment had been rendered by a superior court, which fact precluded that court from entering into a consideration or determination of its validity; in holding that the defendants' possession of the land surrounding the church and its fences had been merely tolerated by the plaintiffs; in holding that it was incumbent upon the defendants to show that the lot and building of Ríos were not enclosed within the area recognized by the said judgment; in granting to the plaintiffs more than was prayed for by the plaintiffs themselves; in rendering judgment for the plaintiffs, with costs; and in erroneously weighing the evidence introduced.

The order granting the injunction *pendente lite* was appealable under subdivision 3 of Section 295 of the Code of Civil Procedure, and to determine now whether or not the same was proper, after a decision of the case on the merits, would have no practical purpose.

We think it unnecessary to discuss or determine the several assignments made by the appellants as to the errors claimed to have been committed by the lower court in regard to the validity or nullity of the judgment rendered by this court in the action brought by the Church against the Municipality of Camuy, because, as we will further on show, even assuming the validity of that judgment, the land the object of the present suit is not comprised within the terms of said judgment, and, moreover, because such was not the gist of the decision of the lower court but that which appears from the following paragraphs of the opinion delivered by it in support of its judgment:

"As the existence of the judgment whereby the title of the Church to the building and lot described in the third paragraph of the complaint has been established by documentary evidence, *the gist of the controversy is confined to two main points: First, whether subsequent to the aforesaid judgment the plaintiff has transferred or in some way forfeited its right of ownership or possession of said property; second, whether the site on which the Municipality has granted to Francisco Ríos permission to build, is located within the boundaries of the lot recognized by the judgment in question as belonging to the Church.*

"There is no evidence to show that the plaintiff has transferred its title. Nor can we infer a forfeiture of either its ownership right or of the civil possession from the fact of having ever tolerated the use of the churchyard, because acts merely tolerated do not affect the possession (Secs. 373 and 1842 of the Civil Code, 1930 ed.).

"As regards the second point, the plaintiff submitted specific evidence of a convincing character according to which the site of the building of Ríos is located within the lot recognized as belonging to the Church by the judgment of the Supreme Court. *It was not expressly alleged by the defendants that the site on which Ríos was granted permission to build lies outside the boundaries established by such judgment,* because they do not acknowledge the validity of the judgment notwithstanding its being *res judicata. Nor did they introduce any concrete evidence to show any specific discrepancy in the boundaries."* (Italics ours.)

So that, in the last analysis, the main question involved in this litigation is whether the structure under construction by codefendant Francisco Ríos on a permit from the other defendant, the Municipality of Hatillo, lies within the boundaries of the lot acknowledged as belonging to the plaintiff by a former judgment, that is, whether, as claimed in the sixth assignment, it was error for the lower court to broaden the scope of the award made by the Supreme Court in its judgment. Closely connected with the sixth is the seventh assignment which relates to the holding of the court that it was incumbent upon the defendants to show that the lot and building of Ríos lay outside such lot.

A determination of those assignments requires an examination and analysis of the evidence introduced by the par-

ties. The evidence for the plaintiffs established the following:

That by the judgment of the Supreme Court in the above-mentioned case the Roman Catholic Apostolic Church in Puerto Rico, Municipality of Hatillo, was declared to be the owner of the following property:

"2.—A parish church standing in front of the main square of Hatillo and *having an area, including the churchyard, of 428 meters and 61 centimeters.* The same is bounded: on the north by North Plaza Street; on the south by South Plaza Street; on the east by the house of Miguel Arrieta; and on the west by the main square." (Italics ours.)

We must pause here a moment in order to state that we can not admit, as claimed by the plaintiffs-appellees, that in the foregoing description a clerical error was committed in their preparation of the original complaint in the year 1904, relied upon for its judgment by the Supreme Court, in the sense that the phrase "including the churchyard" ought to have been inserted after the words "0.61 sq. m." instead of after the word "area," so as to make the description read thus:

"A parish church standing in front of the main square of Hatillo and having an area of 428 meters and 61 centimeters, including the churchyard. The same is bounded, etc."

If, as has been claimed and is still claimed by the appellees, the judgment in the former case constitutes the title to their property in Hatillo, they are precluded now from attempting to change the description therein contained, which judgment was obtained, not upon any evidence introduced, the judgment having been entered by default, but upon the plaintiff's own statements made in its complaint.

The oral evidence for the plaintiffs consisted of the testimony of the witnesses José C. Delgado, who was born in Hatillo and was the parish priest of said town from 1920 to 1923; Vicente López González, the parish priest of Hatillo

at present; and Cecilio Quercadó Molina, the administrator of the properties of the Catholic Church.

Father Delgado testified, in short, that he was 53 years old and was born in Hatillo; he described the church building and the churchyard giving its boundaries; that the churchyard was used by the parishioners for gathering to await the commencement of the religious services and for tethering their horses on which they came from the countryside; that at the time of any festivities booths for operating games of chance (*picas*) and for selling food and drinks were set up thereon; that on the north, south, and east sides, the distance between the present fence and the street is five and odd meters, and on the west side the distance is more than ten meters; that the fence in question was erected in 1921 while he was parish priest and that it was not originally built to cover the whole boundary line, first for reasons of economy, there being a lack of funds, and second, for public æsthetic considerations; that they used to apply to him for permission to set up refreshment booths and that if they were too noisy he would order them not to shout so as not to disturb the religious services; that the kiosks were built of wood and in such manner that they could be moved away after the festivities had ended; that when the fence was built there was harmony between the Church and the Municipality and that he did not apply to anybody for leave to build the same because he considered the land as belonging to the Church and there were funds available and he used some of his own; that nobody prevented him from building the same. On cross-examination he stated that the town of Hatillo was built on ground donated by somebody whom he does not know; that when he went to Hatillo as parish priest in 1920 the church had no fence properly speaking; that there was nothing built of wood or anything left from a former fence; that he had a new fence made of concrete for which he did not have to widen the churchyard *but erected it on the same*

*boundary "as the former fence, the one which existed in Spanish times and which he saw in a ruinous state.; that in order to build the same he did not have to widen the church-yard but built it where many years back others had been built";* that he knew that such fence existed many years back because he saw it when he was a child; that it was built of brick and wood; that in order to build the fence he did not organize any Catholic committee; that he built it with his private funds and with contributions from some of his friends in San Juan and from some catholics in Hatillo who gave money for the church; that it had been suggested to organize a committee to collect funds but it was never organized nor did he call on Mayor Pepín Casanovas; that he spoke with the mayor's father about the progress made in the building of the fence but of nothing else; that the church-yard was not widened when building the fence; that no permit was requested from Mayor Casanovas for widening; that there is land on both sides of the fence; that on the south there was *public* land; that he does not remember whether there was a kiosk belonging to Manuel Circums; that on the north side there was land where the games of chance were put up and there was no structure used as a kiosk; that between the street and the fence a cement path has been built and that he noticed it five or six years ago but does not know who built it; that on that land between the fence and the street within the cement path there were put up booths and kiosks for selling drinks and the church allowed it because they were not stationary and were taken away; that they used to issue permits without charge and he does not know whether other people charged for it.

Father Vicente López González testified that he has been the parish priest of Hatillo ever since 1931; he mentions the same boundaries as the preceding witness; that that land was used by the parishioners and that on the occasion of festivities they allowed the erection of booths for the sale

of eatables, sweets, and other refreshments, for games of chance and merry-go-rounds; that he used to intervene in the installation thereof "as a member of the committee of amusements" and in his capacity as parish priest he used to give his approval, provided they did not make noise or talked loud during the services; that some times he had to come out to stop the noise and they would obey; that the structures were portable; that on his arrival he found there a frame kiosk put up on the north side adjoining the asphalted portion of the church land; that he always objected to the erection or extension of kiosks, including that of defendant Ríos, because he *thinks* that that land belongs to the Church and because they disturb the religious services, *perhaps mainly because of the latter fact;* that the distance from the north wall of the church to the fence is five meters and *that from the fence to the kiosk it is five or six meters;* that the land which lies between the fence and the kiosks is occupied by trees and flower beds; he recognized two photographs of the Church of Hatillo. On cross-examination he stated that the churchyard has an area of 428.61 sq. m.; that between the fence and the house of the heirs of Circums there is a street separating them; that in front of the church building there was built a sidewalk, by the municipality, he thinks, as the Church did not pay for it; that in 1931 and to the north of the land separating the cement path from the fence, there was a frame structure belonging to somebody he does not know although he saw Francisco Ríos there; that he saw him selling refreshments and ice creams which he occasionally bought from him; that he had seen the structure there ever since his arrival until its recent removal by Ríos to the square; that when Ríos raised a concrete structure he objected; that he does not know whether Ríos' kiosk had plumbing and electrical installations; that when he went to Hatillo there was on the south side a wooden structure which is still there but he does not know who owns it; that when

they started to build it of concrete he protested to Mayor Casanovas in writing because he thought it was Church property and the municipality was not entitled to build thereon and because of public æsthetic considerations; that the streets surrounding the church belong to the municipality and merry-go-rounds have been created thereon; that there was room within the cement pathways for the small ones and that one year they put them up and then removed them as there was no room and he protested; that the committee of public amusements in which the Church was represented used to issue the permits; that he protested on account of the noise from the kiosk managed by Ríos; that the noise had existed for many years.

Cecilio Quercadó Molina testified that he is the accountant and administrator of the Church property; that he knows the Hatillo Church; that by reason of this suit he measured said property and the Church held 428.61 sq.m. which, with *the churchyard, made up 1,550 sq. m.,* bounded by North and South Streets, the street separating the churchyard from the square, and East Street, known as J. P. Hernández Street; that between the walls of the building and the streets there are some small parcels of land mixed up within the boundaries. On cross-examination, he stated that the church's boundaries, in accordance with the measurements furnished by him, adjoin the aforesaid streets; that the 428.61 sq.m. is the area of the portion built upon, giving its measurements; that he has been the manager of the Church's properties for the last twenty years but he can not say whether in the last years the churchyard has not changed; that he knows the boundaries from the judgment which describes the building and also the boundaries and that from the survey made by him the building referred to in the complaint fits within such area; that according to the judgment one of the boundaries is the house of Arrieta *but that he did not survey the land as far as the house because a street lies between and he*

*would have had to include the same;* that the sidewalks (*sardinets*) are included in the survey; that he does not know whether on the north side North Street was contiguous to the church building itself about the location of the old wooden fence; that on the west he surveyed as far as and including the sidewalk of the square.

Conrado Monroseau took the stand and confined his testimony to the identification of several photographs taken by him and admitted as evidence for the plaintiffs.

The evidence for the defendants consisted of the testimony of the witnesses Joaquín Sala, Miguel González Avilés, José Casanovas Marrero, José R. Lacomba, Fernando Velázquez, codefendant Francisco Ríos, and Pablo Aguilar, and of documentary evidence. We will give a summary of said testimony.

Joaquín Sala testified that he was 72 years old and had resided in Hatillo for 50 years; that the town of Hatillo occupies an area of nine cuerdas donated, according to his information, by Agustín Ruiz for building the same thereon. Although this statement was clearly hearsay it was not objected to on that ground, although counsel for the plaintiffs raised another question of law which was decided by the lower court as follows:

"Judge. Although it is the opinion of the court that it can not alter the conclusions of the Supreme Court concerning the status established by it relative to the land the object of the suit referred to in the judgment, *however, the testimony of the witness might show that the house under construction, involved herein, lies outside the boundary acknowledged by the Supreme Court in its judgment, and for the purpose of such conclusion any statement concerning the status previously recognized might be considered by the court,* although we reserve our discretionary power not to consider any point adverse to the determination made by that court." (Italics ours.)

The witness went on to testify that he knew the parcel of land in question; that he had been familiar with the

·church since he was a child, when it was a wooden building, which was subsequently built of concrete or brick, 65 years ago; that it then had no fence and was surrounded on all ·sides by unpaved ground and there were on the north side ·some wooden steps; *that when coming out of the church one stepped on the ground, an unpaved surface,* which was the street; that it remained so until a churchyard was built of wood (*sic*) and then of concrete twenty years ago by Father Delgado with the proceeds of public collections, as everybody contributed; that he knew this because he had lived in Hatillo for 50 years and is a catholic; that prior to the con- ·crete fence there was a wooden one along the north and south sides; that the distance from the building to the north side of the fence was about 8 or 10 feet; that when the concrete fence was built three yards on either side was used by the municipality for granting concessions; that the grants so made by the municipality covered land which was formerly the street proper, used by everybody and controlled by the municipality, and in time of festivities booths were put up for business purposes. Upon an objection being raised by the plaintiffs, the court ruled as follows:

"Judge. The court rules.... *that it only hears the witness to see if anything turns up to show that the structure referred to in the complaint is outside the land recognized by the Supreme Court as belonging to the Church, that is, on municipal land.*" (Italics ours.)

The witness further testified that the municipality did not make any use of the land beyond the wooden fence; that ·cattle were tethered everywhere; that he knew codefendant Francisco Ríos; that on the north side the municipal land in question was occupied by a wooden kiosk built by Francisco Ríos after the erection of the fence in 1921; that the municipality during the incumbency of Mayor Velázquez ten or twelve years ago, built a sidewalk (*sardinet*) and the kiosk is located on the same; that on the south side there are also

kiosks belonging to Manuel Circums outside the fence and between the latter and the street. On cross-examination, the witness stated that the land belongs to the municipality because the applications for permits for the installation of kiosks were submitted to the municipality; that he did not know whether any permits were asked from the priest; that he knew it because he used to see the applicants with the mayor on the street, in the square, for it is a small town, a "one-horse" town (*sin sopa*) as the saying goes; that at the time the concrete fence was built a part of the wooden one was standing and the rest had been carried away by the public.

Miguel González Avilés, an employee in the office of the collector of internal revenue, testified that he has been living in Hatillo continuously since the year 1918 until the present; that he knows the church and that he is a Catholic; that prior to 1921 the fence around the church was a wooden one and the land on either side was occupied by the municipality; it was covered with grass and was used during festivities for putting up booths and merry-go-rounds; that the municipality used to collect each day the rent for those sites; that when the concrete fence was built he was the treasurer of the committee consisting of Mayor José Casanovas, Rafael García, and the mayor's father; that the funds were used to pay for labor and materials; that when the fence was built there were set apart, with the approval of Mayor Casanovas, about three or four meters on the right and left sides; that subsequent to the fence the municipality, during the incumbency of Mayor Velázquez, built a sidewalk around the gardens; that the committee worked for the benefit of the church because they were all Catholics, and that was how Father Delgado was able to build the fence. He recognized his signature and that of Collector E. Monroseau on several receipts covering the payment of taxes, for the years from 1928 to 1938, on the property of Ríos in Hatillo. On cross-

examination, he answered that he went to Hatillo in 1918 and that he did not know who was the tenant of the land around the church prior to that time; that in 1918 the church had a small wooden fence, and in 1921 when the concrete fence was built the wooden fence was there but needed repairs; that as some people went there and made the place unsanitary, they decided to build the concrete fence high; that Father Delgado went out with the committee and sent them to the mayor to get the permit and that if he has denied it he is not telling the truth "because if we are Catholics we must tell the truth"; that in towns like Hatillo such applications are made verbally and not in writing; that the collection amounted to from $600 to $700 for the fence and that the sum was insufficient and Father Delgado made up the deficit out of his own money, he thinks.

José Casanovas Marrero testified that he was 57 years old and had been Mayor of Hatillo twice; that he is a Catholic; that he was the mayor in 1921 and knows defendant Ríos who then owned and still owns a kiosk at the north corner of said square; that at first it was built of wood and now the municipal assembly authorized him to build one of concrete; that Ríos has been the owner of the wooden kiosk ever since 1918 and prior to that it belonged to Clemente Ledesma, who built on a permit granted to him by the municipal assembly, but that the land had always belonged to the municipality as it was donated by Ruiz Miranda over 100 years ago; that he has known that ever since he was 12 years old; that the kiosk stands on municipal land for the church grounds extend over the churchyard and are enclosed by the fence; that outside the fence stands the kiosk towards the north and then the sidewalk (*sardinet*) between the kiosk and the street which was built by the municipality during the incumbency of Mayor Fernando Velázquez; that besides the kiosk there are trees which have been planted by the municipality on such land since 1925 and are taken care of by mu-

nicipal employees; that during festivities booths used to be put up on the land on payment of fees to the committee of amusements and the Church never had anything to do with that land; that when Father Delgado was about to build the fence a committee made up of Miguel González and his (the witness') father called on him in his capacity as mayor and he granted them four meters on the north and south sides and he did so as a Catholic and he would have granted more if they had asked him, for in Hatillo no one is hostile to the Church; that prior to that grant the said four meters of land on each side formed part of the streets; that he did not consult the assembly for such grant; that formerly there was a wooden fence that bounded the former churchyard; that on the north side the churchyard was narrow and was a little wider than a man; that outside the wooden fence, and on all sides, the municipality had always owned the land.

José R. Lacomba confined his testimony to the statement that he was a surveyor. He identified a plat of Hatillo as having been made by him, and the same was admitted by the court as a sketch of said town.

Fernando Velázquez, 60 years old, testified that he was Mayor of Hatillo from 1925 to 1928, and before that he had lived there since he was born; that he knew defendant Ríos who owned a kiosk at the corner of the square and he described it as bounded by the streets and on the south by the fence of the churchyard; that the new fence was built by Father Delgado with the help of the town; that Ríos had had that property for the last fifteen years on land belonging to the municipality; that in 1925 he ordered the construction of the sidewalk and the kiosk lies within the same, that is, between the fence and the street; that during the 60 years he has lived in Hatillo the land lying between the fence and the street has been in the possession of the municipality; that the Church never had anything to do with it nor did he count upon the Church in order to build the sidewalk; that

he planted the trees which exist there and which are cared for by the municipal authorities; that he was an altar boy for eight or ten years and there only existed then an old and small wooden fence with scarcely room enough for two persons to walk abreast on the north and south sides, as the width of the space was between six and eight feet and beyond that the Church did not own any more land; that outside the fence the municipality had always been the possessor, and he knew this because he was born there and had been justice of the peace, municipal and school treasurer (besides being mayor) and had to do with it; that the land outside the fence used to be rented by the municipality for putting up kiosks and games of chance during festivities; the letting was done by the mayor always; that on the south side there is another kiosk belonging to Manuel Martínez Circums, within the municipal sidewalk and outside the fence; that on the north side there was, besides the kiosk of defendant Ríos, another one which belonged to Pedro Martínez Vargas who sold it afterwards to a man by the name of Morán. On cross-examination by the counsel for the plaintiff, he testified that he also went about the countryside collecting money for the fence of Father Delgado; that he built the sidewalk as a public improvement, because the residents used to throw refuse there close to the churchyard and to tie up animals and he ordered grass to be planted there; that the kiosks, except the two main ones, were customarily removed after the festivities ended; that the proceeds were expended for the public amusements, part thereof being paid to the priest and a part used for firework and dances.

Codefendant Francisco Ríos testified that he was a resident of Hatillo, a Catholic, 50 years old, and had always lived there; that he occupied some municipal land on the north side and outside the churchyard and owned a kiosk there on which he had been paying taxes ever since 1918. (Seventeen property (kiosk) tax receipts paid by Ríos to the Treasury

of Puerto Rico for the years from 1927 to 1938, inclusive, were admitted in evidence.) That the first of his two kiosks is located to the south of the church between the fence and the street and the land there is 18 feet wide and belongs to the municipality; that at first he leased the kiosk to Circums in 1918; that six years afterwards he moved to another old kiosk on the north side of the church which he had bought from Clemente Ledesma and rebuilt it in 1926; that he had to produce plats and the municipality issued a license to him for the use of the land by virtue of an ordinance; that Pedro Martí had also had a kiosk there for about ten years and he bought it from him in 1929; that his kiosk had a plumbing installation and he had to submit plats to the Department of Health; that the floor was made of tiles; that in order to build the concrete kiosk he had to remove the other and he had new plats made and the municipal assembly passed an ordinance authorizing the building thereof which ordinance was suspended by an order of the court.

Pablo J. Aguilar testified that he was a native of Hatillo, 47 years old, and Mayor of Hatillo from 1933 to 1937; that he knew the church and its surroundings; that the streets have not always been just as they are today; that prior to the administration of Mayor Velázquez in 1925 the street on the north side reached as far as the concrete fence of the church which was built by Father Delgado; that the street covered all the area of the present street and the sidewalk built by Velázquez which narrowed the said street; that before the concrete fence was built the street reached as far as another smaller wooden fence which stood closer to the church's wall; that it was used as a street by passers-by and was leased for games of chance and merry-go-rounds in popular and religious festivities; that that land was administered by the municipality and was controlled by it as its owner; that at the time of the wooden fence there was only about three or four feet from the fence to the wall of the

church; that on the south side the street also reaches as far as the wooden fence; that in 1922 the concrete fence was built widening the churchyard by four meters which belonged to the municipality and afterwards, in 1925, Velázquez built the 18-foot cement pathway; that at the corner of the cement pathway there is a kiosk owned by the heirs of Circums and on the northwest stands another the property of Francisco Ríos and behind the latter still another belonging to Pedro Martí; that these were permanent structures affixed to the soil and equipped with plumbing and light installations; that Ríos used to pay for a municipal license and the taxes; that the Church never challenged the possession of such land by the municipality; that in front of the church and past the fence there is a sidewalk, then the street, and then the square; that the sidewalk was built during his incumbency as mayor and the Church had nothing to do with it; that on the east of the church the street is 30 feet wide and beyond the street is the house formerly belonging to Miguel Arrieta. On being cross-examined, he stated that he ordered engineer Lacomba to draw up a plat of the urban zone of Hatillo and that the land enclosed within the fence is known as church property as that was formerly part of the street, and he re-iterates the assertion made by him and by other witnesses to the effect that the streets reached as far as the church; that the 1,102.50 sq. m. shown on the plat is within the fence which encloses the church at present.

There was admitted as evidence for the defendants a copy of an ordinance passed by the Municipality of Hatillo on May 24, 1938, granting a permit to Francisco Ríos to erect a small concrete structure, according to plans submitted, on a municipal lot 11 feet in front by 25 feet deep and bounded on the north by North Plaza Street, on the south by the church, on the east by a municipal lot, and on the west by the street west of the square.

There was also admitted in evidence a revokable permit granted on September 23, 1923, by José Casanovas, Munici-

pal Commissioner of Public Service, Police and Prisons of Hatillo, to Clemente Ledesma for putting up a portable kiosk on North Plaza Street on a site adjoining the northwest corner of the churchyard upon certain terms, one of which was that he could not sell the kiosk without the consent of the Chief Executive of the Municipality, and the latter reserved to himself the right to have the said kiosk removed by serving notice on its owner and that in case of the latter's failure to remove it, the kiosk would be ordered removed at his expense. A copy of a private contract of sale was enclosed therewith whereby Ríos bought the said kiosk from Ledesma with the approval of Mayor Casanovas.

There was also admitted another similar revokable permit granted to Manuel Circums on September 20, 1923, for the installation of a kiosk on the street south of the square.

Lastly, there was admitted as evidence for the defendants a certificate issued by the Registrar of Property of Arecibo on July 28, 1938, including all the record entries of Miguel Arrieta's house mentioned in the judgment of the Supreme Court as the east boundary of the church. According to the first of such entries, made on March 15, 1890, said house, which originally belonged to José I. Corujo, is described as follows:

"1. URBAN: A two-story house, built of native timber, walled with boards, zinc-roofed, measuring 15.50 meters in front by 15 meters deep, *situated on the east of the Public Square of Hatillo, and bounded on the east and north by the town commons, on the south by Don Antonio Morales, and on the west by the square.* It stands on a lot having a frontage of 18 meters and a depth of 50 meters, *owned by the town of Hatillo,* on which said house was built by virtue of a permit granted by the municipality, as appears from the certificate that will be briefly described, in which the boundaries are set forth as follows: On the east by Don José Ignacio Corujo, *on the north by the town commons, on the west by the street at the rear of the church, and on the south by Don Antonio Morales.....*" (Italics ours.)

The first record entry further reads as follows:

"....The Municipality of Hatillo *has held possession for sixty years in its own name as owner of the lot described, which is a part of the land acquired by it by virtue of the donation made by Don Agustín Ruiz y Miranda,* without any written title, and the same is used for the building of houses for the improvement of the town, on part of which lot there stands the house also described and belonging to Don José Ignacio Corujo, of legal age, unmarried, property owner, domiciled in Hatillo, who instituted, in the municipal court of his district possessory title proceedings regarding the house in question which he has possessed ever since 1887 and which he bought from Don Manuel. Echevarría y Santana, without a sufficient written title. After said possessory proceeding had been admitted, *process was served on the adjoining property owner Morales and on the municipal syndic who failed to set up anything in opposition to the rights of Corujo;* and there appeared as witnesses Don Francisco Velázquez (having no other surname) and Don Alejandro Delgado y Esteva, property owners domiciled in the same district, who testified from personal knowledge to the fact that Don José Ignacio Corujo had been in possession of such house for the time and in the capacity stated. It appears from the certificate issued by the Municipality of Hatillo, sealed and signed by Don Alfredo C. Alfonzo as mayor, by Don José Jesús Colón as syndic, and by don Eugenio Rubio as secretary, that Don José Ignacio Corujo pays $2.50 for taxes on his urban property, it being impossible to state the sum paid by him as taxes upon said house, because in making the assessment account must have been taken of the income from other property belonging to said Corujo. As the district attorney was notified regarding the proceedings and he reported that all the legal formalities had been complied with in the case, an order approving the proceedings was made on April 25, of last year. In virtue thereof, it appearing from an examination of the books of the registry that no previous record entry in conflict with the above recitals exists, I hereby record the possession of the property marked with this number, in favor of the Municipality of Hatillo as regards the lot and *in favor of don José Ignacio Corujo y Araes as regards the house, without prejudice to any third person with a better title to the property.*" (Italics ours.)

The succeeding inscriptions relate to conveyances of the house to various persons up to July 17, 1897, when the same

was recorded in the name of Miguel Arrieta. Such is the whole evidence in the case.

There is a manifest conflict between the state of facts acknowledged in the default judgment rendered by this court in 1908 upon the allegations of the complaint, filed in 1904 by the Roman Catholic Church, and state of the facts existing in 1938, to which it is sought to apply the said judgment. During the trial and while the defendants were submitting their evidence the court became aware of this situation and when admitting the evidence in question, made the statement, in our opinion correctly, that the same might ''show that the house under construction lies outside the boundary acknowledged by the Supreme Court'' and that it heard the evidence ''to see if anything turns up to show that the structure is outside the land recognized by the Supreme Court as belonging to the Roman Catholic Church, that is, on municipal land.''

When deciding the case on the merits, however, it reached the conclusion, which we consider erroneous, that the defendants ''did not introduce any concrete evidence to show any specific discrepancy in the boundaries'' of the lot. Let us transcribe again the paragraph from the opinion on this point:

''As regards the second point, the plaintiff submitted specific evidence of a convincing character according to which the site of the building of Ríos is located within the lot recognized as belonging to the Church by the judgment of the Supreme Court. *It was not expressly alleged by the defendants that the site on which Ríos was granted permission to build lies outside the boundaries established by such judgment,* because they do not acknowledge the validity of the judgment notwithstanding its being *res judicata. Nor did they introduce any concrete evidence to show any specific discrepancy in the boundaries.* There was produced a plat which the preceding mayor had recently ordered to be made without relying therefor on any ownership title or without taking as a basis the judgment of the Supreme Court; and some witnesses testified in an indefinite way regarding the land in question which they supposed was the property

of the Municipality of Hatillo, from conjectures derived from the traffic or the use of the lot tolerated by the Church, with acts in which the municipality assumed intervention." (Italics ours.)

The testimony of the witnesses for the defendants as to the location of the church, its churchyard, the wooden fence, and adjoining streets, as they were prior to 1904, was not controverted by the evidence for the plaintiffs and can not be held to be uncertain or based on inferences. Such testimony showed, in our judgment, that the site of the Hatillo Church, not in 1938 when this present suit was commenced (for then it could not serve as a basis for the determination of this case), but prior to the year 1904 only covered a small churchyard enclosed by a wooden fence which was located a few feet from the wall of the church, and that the streets around the church reached as far as that same churchyard; that the streets were dirt roads and that people stepped unto them when leaving the church; that the said grounds around the church was used for tethering cattle and during festivities for installing refreshment booths, games of chance, merry-go-rounds, etc., on permits from the municipality which used to collect the rent from them daily, although cómplaints from priests because of the noise made during religious services were heard and action taken thereon; that for many years, at least from 1918, the municipality granted permits for the erection of wooden kiosks on the said land to Ríos and others, with plumbing and electrical installations; that it was in 1921 that the churchyard was widened on both sides when the concrete fence was built with popular contributions and the mayor authorized the same to be widened two or three meters on each side; that it was the municipality that built a concrete pathway around the land separating the same from the streets; that the streets were wide and reached the old fence round the churchyard; that the old fence was only three or four feet from the north and south walls of the church; that according to the plat or sketch, admitted in evi-

dence, the present fence encloses an area of one thousand one hundred and two meters and fifty centimeters (1,102.50); and according to Quercadó, a witness for the plaintiffs, 1,550 meters, including the 428.61 of the building, belongs to the Church; that codefendant Ríos has always paid the municipal taxes on the kiosk and he has also paid taxes on said property to the Treasury of Puerto Rico from 1927 to 1938; that according to a certificate issued by the Registrar of Property of Arecibo, the so-called Arrieta house stands on a lot belonging to the Municipality of Hatillo and bounded on the west by the street at the rear of the church, and that the municipality for sixty years prior to the first record entry of said house in 1890, that is, ever since 1830, has been in possession of said lot as owner, it being a part of the land donated to the municipality by Agustín Ruiz Miranda. All of this evidence tends to show not merely acts of tolerance on the part of the Church, but actual acts of ownership performed by the municipality without any intervention or protest from the plaintiffs.

The plaintiffs, however, claim that, in accordance with the judgment of the Supreme Court of 1908, they are entitled to all of the land lying within the boundaries therein stated, notwithstanding the fact that in the very description of their property made by them in a former complaint, they only claimed an area of 428 meters and 61 centimeters, including the churchyard. They rely on the theory that it is the boundaries that determine and distinguish the area of estates, expression of the boundaries being compulsory but not that of the area, and they cite Section 9 of the Mortgage Law which provides that every record shall set forth the nature, location, and bounds of the estate, but that as regards its area only where the same appears from its title and, therefore, that it is not a necessary and indispensable requisite that the same be set forth in the entry. To the same effect they cite the Royal Order of August 13, 1893, which contains gen-

eral instructions regarding the drawing up of public instruments subject to record in the colonial provinces. However, in applying their theory to the case at bar they cite the commentaries of Scaevola and Manresa upon Section 1471 of the Spanish Civil Code, equivalent to Section 1360 of our Civil Code (1930 ed.), whose first paragraph reads as follows:

"Section 1360.—In the sale of real estate made for a fixed price and not at the rate of a specified sum for a unit of measure or number, the increase or decrease of the same shall not be considered, even when greater or less area or amount than that stated in the contract may be found."

That section forms part of Book Fourth of the Civil Code which treats of obligations and contracts, especially its Title IV and Chapter IV dealing with the contract of sale and of the obligations of the vendor, respectively. There is nothing in the case at bar to which the above section might be applicable, as no sale of an estate for a lump sum is involved here. Nothing was sold by the Municipality of Hatillo to the Church for a lump sum to entitle the plaintiffs to claim now the application of the doctrine embodied in said legal precept. The conclusions reached by the plaintiffs in their brief, after setting forth the description of the church property, as the same appears from the complaint and from the former judgment, are as follows:

"*First.*—All of the land enclosed within those bounds was awarded in the judgment, as claimed in the complaint. From the square and the streets north and south of it as far as the house of don Miguel Arrieta. Nothing has been excluded of the area between the church and the main square, between the former and South Street, between the same church and North Street.

"*Second.*—Whoever may have built within such area bought in bad faith, disregarding the ownership title embodied in the judgment of the Supreme Court of Puerto Rico.

"*Third.*—The ownership title having been shown, it was incumbent upon the defendants, as properly held by the Honorable Judge of the District Court of Arecibo, to show that their property was

outside the line recognized as the limit of the land owned by the Roman Catholic Church.''

We can not agree to that. As already stated by us, the uncontradicted evidence of the defendants has shown that, admitting as true and correct the bounds fixed by the former judgment, which we ratify now, the same have not and could not have the scope attributed to them by the plaintiffs. The streets to the north and south of the square, which constituted the north and south boundaries of the church, reached as far as and no farther than the old wooden fence of the church, and likewise the west boundary or main square ended at the street separating it from the square. As to the east boundary, which it is alleged to be the house of Miguel Arrieta, the evidence has also shown that said house is on a lot belonging to the municipality and ever since 1830 it abuts on the street at the back of the church.

We can not agree with the plaintiffs that, from the stated boundaries they are entitled to the inclusion therein of a street of the Municipality of Hatillo, of all the land enclosed by the concrete pathway, and of the sidewalk facing the square, since a logical and reasonable construction would be that the boundaries are the streets themselves, not as they are at present, but as they were in 1904 when the former suit was commenced. Moreover, according to the testimony of Father Delgado himself, the concrete fence was erected on the same place where another fence built of wood had existed ever since Spanish times. This shows, relying on the very evidence of the plaintiffs, that the churchyard was bounded by that fence.

It is true, as alleged by the plaintiffs, that an owner may fence off a part of his property, if he so desires, and this does not mean that he renounces the remainder of his property; but, as shown by the facts in the present case, the plaintiffs never were entitled, pursuant to the judgment rendered by this court, to what they claim in the present action.

Rather, the evidence shows that they are in the enjoyment and possession of a lot with an area of at least 1,102.50 sq. m. very much greater than that having 428.61 sq. m. which, including the churchyard, was recognized as theirs by the said judgment, and that it was by virtue of a donation from the Municipality of Hatillo, rightly or wrongly, that this enlargement was made when building the new concrete fence in 1921.

We are of opinion that codefendant Francisco Ríos and the other persons who have built kiosks on land outside the fence of the plaintiffs have not done so either in bad faith or by tolerance of the plaintiffs, but on permits issued by the Municipality of Hatillo which showed that the land in question was not included within the boundaries recognized by a former judgment in favor of the plaintiffs.

[5] Such former adjudication was not *res judicata* as regards the facts in the instant case, as was held by the lower court. The issue in the case under consideration was not and could not be covered by the former litigation because, as repeatedly stated by us, the facts as alleged by the plaintiff Church in that case and the facts existing in the year 1938 when the Church sought to enforce the former judgment— and the time elapsed is significant—were different. It then obtained a judgment by default against the Municipality of Hatillo upon the allegation that it was entitled to a church building and its churchyard with an area of 428.61 sq. m. within certain boundaries, and now the defendants have shown that certain land of the municipality is not within the land recognized by said judgment as belonging to the plaintiffs. See the decision in *Orama et al.* v. *Oyanguren,* 19 P.R.R. 788, where it was held that a judgment rendered in an action is conclusive as regards the issues joined, but is not *res judicata* in another suit of the same nature between the same parties based on different facts which did not exist when the first action was brought.

We are of opinion that the lower court committed manifest error in weighing the evidence in the instant case, thus

granting to the plaintiffs more than was allowed to them by the judgment in the former case and, therefore, the judgment appealed from must be reversed and substituted by another, which is the one that should have been rendered by said court, dismissing the complaint on the merits, with costs but without including attorney's fees.